GLEN ROCK CO. v. AMERICAN CARAMEL CO.

(Circuit Court of Appeals, Third Circuit. November 25, 1913.)

No. 1741.

PATENTS (§ 328*)—INVENTION—CARAMEL HOLDER.

The Lafean patent, No. 945,788, held invalid; it being merely such an economic mechanical step as naturally followed the growth of an industry, and not such an innovating disclosure as makes an inventive act differ from a mechanical improvement.

Appeal from the District Court of the United States for the Middle District of Pennsylvania.

Suit in equity by the American Caramel Company against the Glen Rock Company. Decree for complainant, and defendant appeals. Reversed.

For opinion below, see 201 Fed. 363.

C. T. Belt, of Washington, D. C., for appellant.

John M. Coit, of Washington, D. C., for appellee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, the American Caramel Company, owner of patent No. 945,788, granted January 11, 1910, to S. B. Lafean, for a caramel holder, brought suit against the Glen Rock Stamping Company charging infringement thereof. That court, in an opinion reported at 201 Fed. Rep. 363, held the patent valid and infringed. From a decree so holding and ordering an accounting, defendant appealed.

The patent concerns tin plates for holding caramels, a field of narrow compass, as will be seen by its own statement that "the object of the invention is to simplify the manufacture of the plates," of the design of the patentee, which were "of general type disclosed in the patent to Wiest, No. 428,765, of May 27, 1890." Wiest's patent shows the use,

in the candy art, of a sheet having rows of rectangular, caramel-holding spaces, each space having central at its sides and ends vertical flanges cut from the sheet, without or exterior to the caramel space, and bent up at right angles. This left the caramel-holding space imperforate. The prior art, however, showed in the patent of Hershey, No. 412,090, of October 1, 1889, a holder with a perforate bottom, whose vertical sides were formed by bending upward at right angle triangular flanges from the holding space. Indeed this particular construction was an inventive feature of Hershey's patent, viz.:

"The objects of my invention are, first, to use portions of the material *from the bottom of the holder to form the sides*."

It is also embodied in his claim which is—

"for a candy holder made from a single plate having portions of the material in the center cut out, said cut-out portions projecting upwards and forming the sides of the holder, and other portions located between said sides extending inward and forming the bottom."

From the foregoing it will be seen that Hershey showed a holder of individual caramels with a perforate bottom, and Wiest showed a sheet assemblage of individual holders with imperforate bottoms. At this point of the art Lafean conceived the idea of placing in Wiest's multiple holding sheet—"this invention relates," says Lafean's specification, "to caramel holders of the general type disclosed in the patent to Wiest" —a series of holders with perforate bottoms, for which no better description can be given than in a claim of Hershey's then expired patent, viz.:

"Having portions of the material in the center cut out, said cut-out portions projecting upward and forming the sides of the holder."

Such being the facts, the question before us is, Did this substitution, on Wiest's assembling sheet, of Hershey's perforate for Wiest's imperforate bottom, constitute invention? On this question the patent office at first held it did not; later it reversed that holding. After a careful study of the case we have reached the conclusion that no invention was here involved. The art was well developed. The patent of Hershey was so old that it had expired, and its disclosure of a perforate bottom space had become common property. So also had the assembling of holders in Wiest's sheets become a use of common right. To us it is clear that the coupling of these two features in a sheet was a mere structural or mechanical advance. It is contended Lafean both strengthened and cheapened the old product; but, even if this contested fact be, for present purposes, conceded, that does not stamp the device with patentable novelty. To so hold would be to make mechanical originality a test of invention. Giving due regard to all that may be said of Lafean's device, it is clear to us that it is such an economic and mechanical step as naturally followed in the evolution of an industry, and not such an original, innovating disclosure as makes an inventive act differ from mere mechanical advance.

The decree below is therefore reversed, and the case remanded, with instructions to dismiss the bill.